Affirmed and Memorandum Opinion filed March 28, 2006









Affirmed
and Memorandum Opinion filed March 28, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01091-CR

____________

 

ANTHONY LEROY
CALLIS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 02CR1934

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Anthony Leroy Callis, was found
guilty by a jury for sexual assault of a child and sentenced to seven years= incarceration in
the Texas Department of Criminal Justice, Institutional Division.  In his sole issue in this appeal, appellant
challenges the factual sufficiency of the evidence supporting his
conviction.  We affirm.  








At the time of the assault on September 1,
2002, appellant was the manager of a singing group of which the complaint,
B.M., was a member along with two other femalesCBridget and
Dominic.  B.M. apparently met appellant
through a telephone Aauditioning@  service that gave appellant the opportunity
to hear a variety of choral voices. 
After sampling the voices, appellant left a message for B.M. to call
him.  After speaking on the phone,
appellant asked B.M., Bridget, and Dominic to sing at his father=s funeral.  B.M. had initially told appellant that she
was 17 years old, but later, before the incident, she told him she was 14.  

At 8:30 a.m., on August 31, 2002,
appellant and his sister picked up B.M., Bridget, and Dominic at B.M.=s home in Houston
to take them to his father=s funeral in
Galveston.  After the funeral, they
eventually went to appellant=s sister=s apartment in
Galveston.  B.M. and Dominic stayed at
the apartment, while Bridget went to a club with some other people.  David Brown, who was appellant=s brother-in-law,
and his two children lived in the apartment with Brown=s sister and her
four children.  Brown and all six
children were home the evening of August 31, 2002.  B.M. and Dominic stayed in the living room,
the boys slept in one bedroom, the girls slept in another bedroom, and Brown
slept in his own bedroom.

One of Brown=s nephews woke him
up and said appellant was at the door. 
Brown told his nephew to let appellant in.  B.M. testified that she had fallen asleep on
couch, when appellant woke her up and told her to go into his sister=s bedroom.  B.M., however, did not leave the couch and
went back to sleep.  At some point, B.M.
got up and went into appellant=s sister=s bedroom and got
into bed.  B.M. was dressed, with the
exception of having taken off her pants, when she got into bed.  Appellant stopped by the bedroom and asked if
B.M. if she needed anything.  B.M. said
no and asked appellant to get Dominic, who was still in the living room.  Appellant left and B.M. turned off the light.

At some point, B.M. Afelt a breeze
under the cover. . . . Like the cover lifting up.@  B.M. thought it was Dominic.  However, B.M. then Afelt [someone]
touching@ her leg and
buttock.  She turned over, saw appellant,
and asked him what he was doing. 
Appellant told her to be quiet and started touching her again.  B.M. told appellant to stop and to get
Dominic; appellant said okay and left.








Appellant, however, returned and started
touching B.M. again.  When she told him
to stop, he told her to be quiet. 
Appellant then moved her underwear to the side and got on top of
her.  B.M. did not say anything because
she was scared.  Appellant put his penis
inside her Aprivate area@ and Athen about two
seconds later,@ David Brown knocked on the door, entered
the bedroom, and told appellant to get out. 
After the incident, B.M. was taken to the house of another sister and
then to the hospital.  

David Brown gave a different account of
what he observed between appellant and B.M. during the early morning hours of
September 1, 2002.  Brown testified that
he kept hearing the children going up and down the hallway.  When he got up, he found the bathroom door
closed, which he usually keeps open and the light on for the children.  Brown found the shower on, but no one in the
bathroom.  Brown could not find appellant
or one of the young ladies.  Brown heard
a noise coming from his sister=s bedroom.  When Brown opened the door and turned on the
light, he saw appellant and complainant on top of the covers, with appellant=s head between
B.M.=s legs.  According to Brown, B.M. was wearing a shirt,
but no underwear.  Brown told appellant
to get out.  He also told B.M. to get
dressed and leave.  Brown described B.M.=s behavior as
being consistent with his having Acaught them doing
something they weren=t supposed to be doing.@  Brown has a 1990 drug conviction.

          Dr. James Lukefahr, a pediatrician at
UTMB in Galveston and the medical director of the ABC Center, a facility that
examines children who may be the victims of child abuse or neglect, did not
personally examine B.M., but testified that an emergency room examination
revealed no findings of trauma.  Dr.
Lukefahr explained there are a number of factors that can contribute to no
findings of trauma.  One factor is if the
assault did not involve a great degree of violence or coercive force.  Another factor is the maturity level of the
child.  The physician who performed the
emergency room examination noted that B.M. was sexually mature, i.e., an adult
physically, which means it is possible for there to be no dramatic physical
injuries.  








Dr. Lukefahr further testified that the
Department of Public Safety crime lab report states the rape kit, clothing, and
bed sheets were submitted for analysis, but nothing was found that appeared to
be semen, blood or other material that could be tested.  Dr. Lukefahr also explained that no DNA analysis
was conducted on the hairs because they belonged to B.M.  Finally, although trace evidence was
collected from the bed sheets and B.M.=s clothes, the
examiner made the decision not to test that material.  

Appellant challenges the factual
sufficiency of the evidence supporting his conviction.  When reviewing the factual sufficiency of the
evidence, we need answer only one question: 
Considering all of the evidence in a neutral light, was the trier of
fact rationally justified in finding guilt beyond a reasonable doubt?  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  There are two
ways in which the evidence may be insufficient. 
Id.  First, when considered
by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. 
Id.  Second, there may be
evidence both supporting, and contrary to, the verdict.  Id. 
Weighing all the evidence under this balancing scale, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met and the guilty verdict should not stand.  Id. at 485.  

The indictment alleged appellant caused
contact or penetration of the complainant=s female sexual
organ with his penis and that he caused the complainant=s female sexual
organ to contact his mouth.  The court=s charge, however,
asked only whether appellant had committed assault by contact or penetration of
the female sexual organ with his penis. 
Therefore, according to appellant, the State=s case hinged on
whether the jury believed Brown=s version or B.M.=s version of what
occurred.  Based on the conflicting
testimony by B.M. and Brown, appellant contends it is not reasonable to find
beyond a reasonable doubt  a fact that is
contradicted by testimony without other evidence to support one side or the
other. 








The indictment may allege different ways
of committing the offense in the conjunctive and the jury may be charged in the
disjunctive.  Vasquez v. State,
665 S.W.2d 484, 486 (Tex. (Tex. Crim. App. 1984), overruled on other grounds
by Gonzales v. State, 723 S.W.2d 746 (Tex. Crim. App. 1987).  When the State pleads alternative theories of
the same offense, it is not required to prove guilt under all the theories
alleged.  Lawton v. State, 913 S.W.2d
542, 551 (Tex. Crim. App. 1995), overruled on other grounds by Mosley v.
State, 983 S.W.2d 249 (Tex. Crim. App. 1998).  Therefore, if there is sufficient evidence to
prove one of the two ways of committing the offense, the appellate court need
not consider whether the evidence is sufficient to prove the alternative
theory.  Vasquez, 665 S.W.2d at
486.  

The jury charge instructed the jury to
find appellant guilty if he caused Acontact or
penetration@ of the female sexual organ.  Appellant did not move for the State make an
election on manner.  Thus, because the
indictment and jury charge alleged two different ways of committing the
offense, proof of either manner, i.e., contact or penetration, is sufficient to
sustain the conviction.  A review of the
record reveals the evidence supports both contact and penetration.  

Contact is sufficient to constitute
penetration if it is more than mere external contact with the outer vaginal lips.  Vernon v. State, 841 S.W.2d 407, 409
(Tex. Crim. App. 1992).  B.M. testified
that appellant got on top of her, moved her underwear to the side, and put his
penis in her Aprivate area.@  The testimony of a child alone is sufficient
to support a conviction for sexual assault. 
Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d); Ruiz v. State, 891 S.W.2d 302,
304 (Tex. App.CSan Antonio 1994, pet. ref=d); Hellums v.
State, 831 S.W.2d 545, 547 (Tex. App.CAustin 1992, no
pet.). 

Appellant also complains of the absence of
any findings of trauma.  Dr. Lukefahr
testified that there may not be findings of trauma where violence or coercive
force is not used and where the victim is sexually mature.  Here, Dr. Lukefahr described B.M. as sexually
mature.  Moreover, B.M. did not testify
as to any violence, but instead she stated that she kept quiet when appellant
told her to because she was scared, suggesting she was submissive.  








Finally, appellant contends it is not
reasonable to find penetration beyond a reasonable doubt when that allegation
was contradicted by Brown who said he observed oral sex, not penile contact or
penetration.  It is within the province
of the trier of fact to resolve any conflicts and inconsistencies in the
evidence.  Heiselbetz v. State,
906 S.W.2d 500, 504 (Tex. Crim. App. 1995). 
Moreover, the trier of fact is free to believe or disbelieve part or all
of a witness= testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998).  Therefore, the
jury was free to believe B.M.=s version of the
events of September 1, 2002, and reject Brown=s, which apparently
it did.  

When viewed neutrally, the evidence is not
so obviously weak as to render the verdict clearly wrong or so greatly
outweighed by contrary proof as to indicate manifest injustice. Appellant=s sole issue is
overruled.

Accordingly, the judgment of the trial
court is affirmed.  

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed March 28, 2006.

Panel
consists of Justices Hudson, Frost, and Seymore.

Do
Not Publish C Tex.
R. App. P. 47.2(b).